[Docket No. 18]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| YOANILA BOOKER, *individually, and as Administrator/Executor of the Estate of Estate of Wendell Booker and Yoanila Booker*,<br><br>Plaintiff,<br><br>v.<br><br>CENTRAL LOAN ADMINISTRATION & REPORTING and NEW JERSEY HOUSING AND MORTGAGE FINANCE AGENCY,<br><br>Defendants. | Civil No. 24-670 (RMB-EAP)<br><br>**OPINION** |

**RENÉE MARIE BUMB, Chief United States District Judge**

## I.  INTRODUCTION

This matter comes before the Court upon a Motion for Judgment on the Pleadings (the "**Motion**") filed by Defendants Central Loan Administration & Reporting ("**Cenlar**") and New Jersey Housing and Mortgage Finance Agency ("**NJHMFA**"). [Docket No. 18.] Plaintiff Yoanila Booker has opposed the Motion. [Docket No. 19.] Defendants submitted a reply brief in further support of their Motion. [Docket No. 20.] Pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b), the Court did not hear oral argument. For the reasons set forth below, the

Court will **GRANT** Defendants' Motion and **DISMISS** the Complaint **WITH PREJUDICE**, in part, and **WITHOUT PREJUDICE**, in part.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

In 2017, Defendant NJHMFA initiated a foreclosure action in the Superior Court of New Jersey against Plaintiff's husband, Wendell Booker, for failure to make payments on his home mortgage. *See NJHMFA v. Booker*, No. 19081-F-17 (N.J. Super. Ct., filed Aug. 11, 2017).[1] In 2022, the Superior Court entered an uncontested final judgment of foreclosure in favor of NJHMFA. [*Id.* at Trans ID. CHC202277535.] So that he would not lose his home to foreclosure, Mr. Booker sought loss mitigation relief from the servicer of his mortgage, Defendant Cenlar. [Docket No. 1 ("**Compl**.") at 2.A.] Cenlar approved Mr. Booker for a trial mortgage loan modification. [*Id.* at 2.D.ii.] He made his trial payments on time. [*Id.* at 2.D.iii.]

Mr. Booker passed away before Cenlar issued a permanent modification to the mortgage. [*Id.* at 2.D.iv.] Because the permanent modification offer—and the mortgage itself—was originally issued in Mr. Booker's name, Ms. Booker could not accept the modification. Instead, she sought to have the permanent modification reissued in her name as Mr. Booker's successor in interest. [*Id.* at 2.D.vi.]

Over the next few months, she made numerous attempts to have Cenlar reissue the loan modification in her name as Mr. Booker's successor in interest. [*Id.* at 2.D.vi–

---

[1] The Court is permitted to take judicial notice of documents from the underlying foreclosure action. *See Ezekwo v. Caliber Home Loans, Inc.*, 2021 WL 2390053, at *1 n.4 (D.N.J. June 11, 2021).

viii.] After five months without a response, Cenlar advised Plaintiff that she would need to submit a new modification application which she did along with the necessary supporting documents. [*Id*. at 2.D.ix.] She re-forwarded the supporting documents a few weeks later after Cenlar told her that they could not locate her supporting documents. [*Id*. at 2.D.x–xi.] About one month later, Cenlar both confirmed receipt of Plaintiff's modification application and her status as Mr. Booker's successor in interest to the mortgage. [*Id*. at 2.D.xiii.]

Notwithstanding Plaintiff's outstanding loan modification application, Defendants scheduled a sheriff sale on the home for June 28, 2023. [*Id*. at 2.D.xiv.] Plaintiff then submitted a new modification application and for the rest of the summer went back and forth with Cenlar regarding the status of her application. [*Id*. at 2.D.xv–xxii.] Eventually, Cenlar denied the application, informing Plaintiff that there was not enough time to review the application prior to the rescheduled sheriff sale on August 24. [*Id*. at 2.D.xxiv.] Plaintiff objected and Cenlar eventually issued her a permanent modification to the mortgage in her own name. [*Id*. at 2.D.xxv.] NJHMFA vacated the final judgment of foreclosure. [*See NJHMFA*, No. 19081-F-17 at Trans. ID CHC202435858.]

Plaintiff filed this suit against Defendants alleging common law negligence and/or reckless indifference and/or intentional misrepresentation (Count I); common law fraud and/or violation of the New Jersey Consumer Fraud Act N.J.S.A. ("**CFA**") (Count II); and violations of the Real Estate Settlement and Procedures Act

("**RESPA**"), Truth-in-Lending Act ("**TILA**"), and Fair Debt Collections Practices Act ("**FDCPA**") (Count III). Defendants moved to dismiss.

### III.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) states that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "A motion for judgment on the pleadings under Rule 12(c) 'is analyzed under the same standards that apply to a Rule 12(b)(6) motion.'" *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019) (quoting *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010)). Thus, to succeed on a motion for judgment on the pleadings, a movant must show "there are no material issues of facts, and he is entitled to judgment as a matter of law." *Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017). When deciding a motion for judgment on the pleadings, a court must accept the nonmoving party's factual allegations as true and draw all reasonable inferences in its favor. *Id*. at 418.

### IV.  ANALYSIS

#### A.  Plaintiff's Claims Against NJHMFA Will Be Dismissed

As an initial matter, the alleged wrongdoing described in the Complaint has nothing to do with NJHMFA. NJHMFA brought a foreclosure action against Mr. Booker because he defaulted on his mortgage. But Plaintiff's claims all relate to Cenlar's alleged failure to issue a mortgage modification in her name as successor in interest to Mr. Booker. Indeed, the exhibits appended to Plaintiff's Complaint make

clear that her efforts to have the modification issued were between her and Cenlar, not her and NJHMA. [*See* Compl., Exs. A–G; *see also Wolfington*, 935 F.3d at 195 (court may consider exhibits attached to complaint on a Rule 12(c) motion).] Accordingly, the Court will dismiss NJHMA from this action because Plaintiff has failed to articulate a short and plain statement demonstrating her entitlement to relief against NJHMA for the claims that she is bringing. *See* FED. R. CIV. P. 8(a)(2). The remainder of the analysis proceeds only against Cenlar.

### B. Plaintiff's Negligence Claim

The Court will dismiss Plaintiff's tort claims against Cenlar for "negligence and/or reckless indifference." New Jersey courts do not recognize a stand-alone cause of action for reckless indifference. *See Phoenix Pinelands Corp. v. United States*, 2010 WL 1704743, at *4 (D.N.J. Apr. 26, 2010) (explaining that New Jersey courts do not recognize an independent tort of "recklessness").

Plaintiff's claims of negligence against Cenlar for "engag[ing] in a repetitive pattern of neglect and/or misrepresentation" by "informing [her] that they would be able to promptly and competently process [her] loan modification," also fail. [Compl. at Count I.] With respect to the time period before Cenlar confirmed Plaintiff as successor in interest to the mortgage but before it issued the permanent modification, she has failed to articulate a duty that Cenlar breached. *See Kelly v. Gwinnell*, 476 A.2d 1219 (N.J. 1984) (plaintiff must show that a defendant owed her a duty of care and that defendant's conduct was below the standard of care). Mortgage servicers do not owe a free-standing duty of care to borrowers, let alone non-borrowers like Plaintiff.

5

*Shinn v. Champion Mortg. Co., Inc.*, 2010 WL 500410, at *4 (D.N.J. Feb. 5, 2010) (collecting cases). Before Cenlar confirmed Plaintiff as successor in interest to the mortgage, Plaintiff was a non-borrower to whom Cenlar owed no duty.

With respect to the period after Cenlar confirmed Plaintiff as successor in interest to the mortgage, her claims are barred by the economic loss doctrine. The economic loss doctrine prevents a plaintiff from recovering in tort where her alleged injured flows from a breach of contract. *Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 280 (N.J. 2002). Plaintiff admits that there was no contract between her and Cenlar until she was confirmed as successor in interest to the mortgage. [Docket No. 19 at 10.] That concession makes the economic loss doctrine inapplicable during the period before she was confirmed as successor in interest because the economic loss doctrine does not and cannot apply without an underlying contract. *Symbiont Sci. Eng'g & Constr., Inc. v. Ground Improvement Servs., Inc.*, --- F. Supp. ----, 2024 WL 1110902, at *10 (D.N.J. Mar. 14, 2024) (explaining that when there is no contract between the parties, economic loss doctrine cannot apply). Once Cenlar confirmed Plaintiff as successor in interest to the mortgage, she assumed the contractual rights arising out of the mortgage. Courts in this District have routinely held that the economic loss doctrine bars negligence claims against a mortgage servicer because the duties between borrower and servicer are exclusively governed by the mortgage contract itself. *Wilson v. RoundPoint Mortg. Servicing Corp.*, 2022 WL 3913318, at *3 (D.N.J. Aug. 31, 2022); *Hartman v. Wells Fargo Bank, N.A.*, 2015 WL 4974092, at *6 (Bankr. D.N.J. Aug. 19,

6

2015), *aff'd in part sub nom. In re Hartman*, 2016 WL 7189826 (D.N.J. Dec. 12, 2016), and *aff'd in part sub nom. In re Hartman*, 2017 WL 2230336 (D.N.J. May 22, 2017); *Skypala v. Mortgage Elec. Registration Sys., Inc.*, 655 F.Supp.2d 451, 460 (D.N.J. 2009) (economic loss doctrine barred negligence claim against mortgage servicer for improper charges and fees because the "mere failure to fulfill obligations encompassed by the parties' contract … is not actionable in tort") (citing *Saltiel, Inc.*, 788 A.2d at 280).

A plaintiff can only survive application of the economic loss doctrine to maintain a negligence claim where she can point to a duty of care owed to her by the defendant "separate and apart from the contract between the parties." *Salitiel*, 170 A.2d at 279. But the only such duties that Plaintiff identifies arise out of RESPA, a federal statute that she separately brings claims under. [Docket No. 19 at 8–9.] Her negligence claim is thus duplicative of her claim under the RESPA. *Wilson*, 2022 WL3913318 at \*3 (applying economic loss doctrine where plaintiff failed to articulate a separately owed duty outside of RESPA claims). Because Plaintiff has failed to identify a separate duty that would permit her to bring a claim for negligence otherwise barred by the economic loss doctrine, the Court will dismiss Count I.

C. **Common Law Fraud and CFA Claims**

Claims for common law fraud and under New Jersey's CFA are subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements which require the plaintiff to allege the "essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and

7

how of the events at issue." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276-77 (3d Cir. 2006) (internal quotation marks omitted); *Block v. Seneca Mortg. Servicing*, 221 F. Supp. 3d 559, 594 (D.N.J. 2016) ("Rule 9(b) applies with equal force to fraud actions brought under federal statutes as to those actions that are based on state law but brought in federal court.") (internal quotation marks omitted). A claim for common law fraud under New Jersey law requires "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997). A CFA claim requires a showing of (1) unlawful conduct by defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss. *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. 2009).

The Court finds that Plaintiff's CFA and common law fraud claims are not alleged with sufficient specificity to comport with Rule 9(b)'s heightened pleading standard. As in *Wilson*, Plaintiff's allegations that she relied on "services promised" by Cenlar including to "provide superior and legally compliant loan servicing," [*see* Compl. at Count II], are both vague and generic; they "do not identify the contents of a specific promise" or "who made such a promise or when." *Wilson*, 2022 WL 3913318, at *4 (holding that identical allegations were insufficient to state common law fraud and CFA claims). The Court will dismiss these claims without prejudice.

8

## D. RESPA Claims

The RESPA is "a consumer protection statute that regulates the real estate settlement process." *Jones v. ABN Amro Mortg. Grp., Inc.*, 606 F.3d 119, 124 (3d Cir. 2010). Its regulations require mortgage servicers to (1) "establish reasonable policies and procedures to achieve certain delineated objectives"; (2) "provide information about mortgage loss mitigation options to delinquent borrowers"; (3) "establish policies and procedures for providing delinquent borrowers with continuity of contact with servicer personnel capable of performing certain functions"; and (4) "evaluate borrowers' applications for available loss mitigation options." 78 Fed. Reg. 10,696, 10,696 (Feb. 14, 2013). The regulations do not impose a duty on mortgage servicers to provide any borrower with any specific loss mitigation option. 12 C.F.R. § 1024.41(a); *Block*, 221 F. Supp. 3d at 591. But if a servicer offers loss mitigation, it must adhere to certain procedural requirements outlined in the regulations. *Loconsole v. Wells Fargo Mortg.*, 2018 WL 3158816, at *6 (D.N.J. June 28, 2018).

"To state a claim under RESPA, a plaintiff must first identify a violation of an obligation under the statute and then must allege cognizable damages under the statute." *Wilson*, 2022 WL 3913318, at *5 (citing *Giordano v. MGC Mortg., Inc.*, 160 F. Supp. 3d 778, 781 (D.N.J. 2016)). A borrower-plaintiff may recover actual damages if she proves that the loan servicer failed to comply with a particular RESPA requirement and that she sustained actual damages "as a result of the failure." 12 U.S.C. § 2605(f)(1)(A). A borrower-plaintiff may recover statutory

9

damages up to $2,000 if the damages are based on "a pattern or practice of noncompliance[.]" 12 U.S.C. § 2605(f)(1)(B). "[W]hen basing a claim on actual damages, the borrower has the responsibility to present specific evidence to establish a causal link between the financing institution's violations and their injuries." *Giordano*, 160 F. Supp. 3d at 781. Conclusory allegations will not suffice. *Id*.

Plaintiff's allegations are insufficient to maintain a RESPA claim. She fails to plead nonconclusory facts with respect to how Cenlar violated the statute's procedural requirements and how those violations actually caused her injuries or that "the alleged violations were the standard or routine way of operating for the allegedly non-compliant loan servicer." *Davis v. Deutsche Bank Nat'l Tr. Co.*, 2017 WL 4155089, at *8 (E.D. Pa. Sept. 19, 2017) (citation omitted). For example, she alleges that she suffered physical and emotional harm due to the anxiety, stress, fear and embarrassment related to the possible loss of her property and "[e]conomic losses" by exposure to "additional interest, late fees, damage to credit, counsel fees and costs." [Compl. at Count III.] But Plaintiff must plead what expenses she actually incurred related to specific regulatory violations. *Wilson*, 2022 WL 3913318, at *5; *Block*, 221 F. Supp. 3d at 593. She may not rely on conclusory allegations. Accordingly, Plaintiff's RESPA claim will be dismissed without prejudice.

E.  **TILA and FDCPA Claims**

Plaintiff did not address Cenlar's arguments in support of dismissal regarding her TILA and FDCPA claims. A claim is deemed abandoned where the plaintiff fails to offer any opposition to dismissal of that claim. *Sevajian v. Castro*, 2022 WL 17733675, at *3 n.1 (D.N.J. Dec. 6, 2022) (deeming cause of action waived by plaintiff failing to offer any argument in opposition to defendants' motion to dismiss); *Stokes v. Farrell L. Grp., LLC*, , 2012 WL 1455239, at *4 (D.N.J. Apr. 26, 2012) (finding FDCPA claim abandoned where plaintiff failed to offer opposition to defendant's motion for judgment on the pleadings); *Levy-Tatum v. Navient Sols., Inc.*, 183 F. Supp. 3d 701, 712 (E.D. Pa. 2016) (collecting cases finding that plaintiff's failure to address a defendant's arguments for dismissal as an abandonment). Thus, the Court will dismiss Plaintiff's TILA and FDCPA claims without prejudice.

V.  **CONCLUSION**

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings will be **GRANTED** and the Complaint **DISMISSED**. An accompanying Order shall issue.

| | |
|---|---|
| **November 19, 2024** | **s/Renée Marie Bumb** |
| Date | RENÉE MARIE BUMB |
| | Chief United States District Judge |